Justice Ginsburg,
concurring in part and dissenting in part.
I join Parts I, II, and III of the Court’s opinion, and dissent from Parts IV and V.
This case is unlike the Court’s recent forays into the domain of state tort law under the banner of substantive due process. See State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U. S. 408, 418-428 (2003) (reining in state-court awards of punitive damages); BMW of North America, Inc. v. Gore, 517 U. S. 559, 574-585 (1996) (same). The controversy here presented “arises under federal maritime jurisdiction,” ante, at 501 (opinion of the Court), and, beyond question, “the Court possesses the power to craft the rule it announces today,” ante, at 522 (Stevens, J., concurring in part and dissenting in part). The issue, therefore, is whether the Court, though competent to act, should nevertheless leave the matter to Congress. The Court has explained, in its well stated and comprehensive opinion, why it has taken the lead. While recognizing that the question is close, I share Justice Stevens’ view that Congress is the better equipped decisionmaker.
First, I question whether there is an urgent need in maritime law to break away from the “traditional common-law approach” under which punitive damages are determined by a properly instructed jury, followed by trial-court, and then appellate-court review, “to ensure that [the award] is reasonable.” Pacific Mut. Life Ins. Co. v. Haslip, 499 U. S. 1, 15 (1991). The Court acknowledges that the traditional approach “has not mass-produced runaway awards,” ante, at 497, or endangered settlement negotiations, ante, at 498-499, n. 15. Nor has the Court asserted that outlier awards, insufficiently checked by abuse-of-discretion review, occur more *524 often or are more problematic in maritime cases than in other areas governed by federal law.
Second, assuming a problem in need of solution, the Court’s lawmaking prompts many questions. The 1:1 ratio is good for this case, the Court believes, because Exxon’s conduct ranked on the low end of the blameworthiness scale: Exxon was not seeking “to augment profit,” nor did it act “with a purpose to injure,” ante, at 494. What ratio will the Court set for defendants who acted maliciously or in pursuit of financial gain? See ante, at 510-511. Should the magnitude of the risk increase the ratio and, if so, by how much? Horrendous as the spill from the Valdez was, millions of gallons more might have spilled as a result of Captain Hazel-wood’s attempt to rock the boat off the reef. See ante, at 478 (opinion of the Court); cf. TXO Production Corp. v. Alliance Resources Corp., 509 U. S. 443, 460-462 (1993) (plurality opinion) (using potential loss to plaintiff as a guide in determining whether jury verdict was excessive). In the end, is the Court holding only that 1:1 is the maritime-law ceiling, or is it also signaling that any ratio higher than 1:1 will be held to exceed “the constitutional outer limit”? See ante, at 515, n. 28. On next opportunity, will the Court rule, definitively, that 1:1 is the ceiling due process requires in all of the States, and for all federal claims?
Heightening my reservations about the 1:1 solution is Justice Stevens’ comment on the venturesome character of the Court’s decision. In the States, he observes, fixed ratios and caps have been adopted by legislatures; this Court has not identified “[any] state court that has imposed a precise ratio” in lieu of looking to the legislature as the appropriate source of a numerical damages limitation. Ante, at 520.
* * *
For the reasons stated, I agree with Justice Stevens that the new law made by the Court should have been left *525 to Congress. I would therefore affirm the judgment of the Court of Appeals.